**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BONNIE SIMON, | ) |
| Plaintiff, | ) ) )   2:20-cv-193-NR |
| v. | ) ) |
| UPMC MERCY, | ) ) |
| Defendant. | ) ) ) |

**MEMORANDUM OPINION**

**J. Nicholas Ranjan, United States District Judge**

Plaintiff Bonnie Simon brings this case under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* Mrs. Simon formerly worked as a Lead Patient Care Technician at UPMC Mercy hospital. She alleges that UPMC failed to make reasonable accommodations for her various disabling conditions, and that the hospital failed to engage in the required interactive process for her accommodation requests.

Mrs. Simon requested two accommodations. She asked that she not have to work consecutive 12-hour shifts and that UPMC transfer her to another position. As Mrs. Simon tells it, these accommodations were never granted. As a result, her performance suffered and UPMC eventually terminated her.

UPMC moves for summary judgment on Mrs. Simon's ADA claim for four reasons. First, UPMC argues that Mrs. Simon released her ADA claim while settling her separate workers' compensation claim. Second, it argues Mrs. Simon failed to properly exhaust her administrative remedies because she did not timely submit her charge of discrimination to the Equal Employment Opportunity Commission. Third, it argues that Mrs. Simon is judicially estopped from bringing her ADA claim because of allegedly contradictory statements she made about her ability to perform the key functions of her job on her application for Social Security Disability Insurance.

- 1 -

Fourth, it argues that Mrs. Simon is not a "qualified individual" under the ADA—that is, she could not adequately perform the duties of her job with or without an accommodation and that her request to transfer to another position was unreasonable.

Applying the familiar standard of Federal Rule of Civil Procedure 56,[1] the Court will deny UPMC's motion. As a matter of law, Mrs. Simon did not release the ADA claim she is bringing in this case. Nor is she judicially estopped from bringing it. As for UPMC's remaining two arguments, genuine issues of material fact preclude a grant of summary judgment.

## DISCUSSION & ANALYSIS[2]

### I.   Mrs. Simon did not release her ADA claim.

UPMC argues that Mrs. Simon's signing of a Compromise and Release Agreement releasing her workers' compensation claim waived her right to pursue her ADA claim. ECF 28, pp. 11-16. This argument, however, misses the mark given the Third Circuit's decision in *Zuber v. Boscov's*, 871 F.3d 255 (3d Cir. 2017).

In *Zuber*, the Third Circuit held that a substantially similar C&R did not release claims against an employer under the Family and Medical Leave Act or

---

[1] Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At summary judgment, the Court must ask whether the evidence presents "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986). In making this determination, "all reasonable inferences from the record must be drawn in favor of the nonmoving party and the court may not weigh the evidence or assess credibility." *Goldenstein v. Repossessors, Inc.*, 815 F.3d 142, 146 (3d Cir. 2016) (cleaned up). The moving party bears the initial burden to show the lack of a genuine dispute of material fact, and "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment is improper. *Id.* (cleaned up).

[2] The Court primarily writes for the benefit of the parties, who are familiar with the factual and procedural background, as well as the record evidence.

Pennsylvania common law.  *Id.* at 259-60.  The language of the *Zuber* C&R stated that it was "intend[ed] … to be a full and final resolution of all aspects of the … alleged **work injury claim** and its sequela whether known or unknown at this time." *Id.* at 259 (emphasis added).  According to the Third Circuit, that sentence only prohibited the plaintiff from suing for other work injury claims—it did not prevent him from suing for violations of his rights under the FMLA.  *Id.*

The plaintiff in *Zuber* also relinquished: "all rights to seek any and all past, present, and/or future benefits, including, but not limited to, wage loss benefits, specific loss benefits, disfigurement [sic] benefits, medical benefits or any other monies of any kind including, but not limited to, interests, costs, attorney's fees, and/or penalties for or in connection with the alleged … work injury claim as well as any other work injury claim(s) Employee may have[.]" *Id.*  The court likewise concluded that this provision only limited the plaintiff's relinquishment of "benefits" and "monies" to work injury claims—not FMLA or common law claims.  *Id.* at 259-60.

There is no material difference between the various C&R provisions examined in *Zuber* and the ones present here.  As was the case in *Zuber*, the C&R Mrs. Simon signed provides that she and UPMC intended to "resolve and settle the Claimant's December 5, 2017 workers' compensation claim."  ECF 29-1, Ex. P, ¶ 10.  And the release was limited to "any and all liability for any and all benefits of whatever kind or classification **under the Pennsylvania Workers' Compensation Act**[.]" *Id.* at ¶ 16(2) (emphasis added).  Consistent with this intention, the C&R states that it covered and resolved "any and all liability to pay for any and all past, present, and/or future wage loss, specific loss, disfigurement, and medical benefits related to the December 5, 2017 work injury" (*id.* at ¶ 10), and "any and all known injuries, other

than the December 5, 2017 work injury, whether mental or physical, that the Claimant sustained, or may have sustained, while employed by [UPMC]" (*id.* at ¶ 4).

Mrs. Simon's complaint, though, "does not concern a 'work injury claim,' but rather [UPMC's] purported failure to provide reasonable accommodation for [her] disability[.]" *Bing v. Iron Mountain Secure Shredding, Inc.*, No. 17-4191, 2018 WL 466456, at *2 (E.D. Pa. Jan. 18, 2018). Thus, the language of the C&R "cannot be read as a release of claims for … failure to accommodate under the ADA." *Id.* at *3. That's because the "gist of the C&R" was "to resolve entitlement to work-injury benefits, not other types of legal claims [Mrs. Simon] may have had." *Id.* (citation omitted). This conclusion is reinforced by the fact that "[t]here is no reference to releasing ADA or PHRA claims anywhere in the C&R." *Canfield v. Movie Tavern, Inc.*, No. 13-3484, 2013 WL 6506320, at *2 (E.D. Pa. Dec. 12, 2013) (denying motion to dismiss ADA claim based on waiver argument).

UPMC mainly relies on two cases to argue that the C&R's release language is broad enough to encompass Mrs. Simon's claims in this case. *See* ECF 28, p. 13 (citing *Hoggard v. Catch, Inc.*, No. 12-4783, 2013 WL 3430885 (E.D. Pa. July 9, 2013) and *Flynn v. Fed. Exp.*, No. 07-2455, 2008 WL 2188549 (E.D. Pa. May 23, 2008)). These cases, however, were both decided before the Third Circuit's decision in *Zuber*. But even putting that fact aside, both cases are distinguishable. The release language in *Flynn* was broader than the language presented here because it generally released "all past, present and future liability," without the many qualifiers present in the C&R at issue in this case. 2008 WL 2188549, at *3. In *Hoggard*, the release provisions lacked language limiting its scope to workplace injuries. 2013 WL 3430885, at *3-4.

Given the language of the C&R, the Court finds that "the relinquishment of [Mrs. Simon's] rights is cabined to benefits from a work injury claim, not rights that

arise under the ADA." *Bing*, 2018 WL 466456, at *3 (citation omitted).  Mrs. Simon has therefore not released her ADA claim in this case.

## II.    There is a genuine dispute of material fact about whether Mrs. Simon timely filed her EEOC charge.

UPMC also argues that the Court should grant summary judgment because "Mrs. Simon failed to exhaust her administrative remedy." ECF 28, p. 10.  This is so, according to UPMC, because Mrs. Simon filed her charge of discrimination with the EEOC too late.  *Id.* at pp. 8-11.  Mrs. Simon counters that she did file the charge on time, but because of an "administrative error at the EEOC," her original charge was lost.  ECF 32, pp. 8-10.  The record reveals that there is a genuine dispute of material fact about the timeliness of her charge submission, so summary judgment is not appropriate.

Before suing in federal court, a plaintiff alleging an ADA violation must exhaust his or her administrative remedies with the EEOC.  *See Robinson v. Consol Pa. Coal Co.*, 425 F. Supp. 3d 433, 441-42 (W.D. Pa. 2019) (Ranjan, J.).    In Pennsylvania, a verified charge under the ADA must be filed with the EEOC within 300 days of the alleged unlawful employment practice.  *Simko v. U.S. Steel Corp.*, No. 19-765, 2019 WL 6828421, at *3 (W.D. Pa. Dec. 13, 2019) (Conti, J.) (citations omitted).  That limitations period is measured from the date the employer informed the employee of his or her termination.  *Id.* (citations omitted).

UPMC notified Mrs. Simon of her termination on April 27, 2018.  ECF 29-4. Mrs. Simon's deadline to file her EEOC charge was therefore February 21, 2019 (*i.e.*, 300 days from April 27, 2018).  It is undisputed that the EEOC received a copy of the charge on March 28, 2019.  ECF 28, p. 9; ECF 32, p. 9.  What is disputed is whether Mrs. Simon produced enough evidence to create a genuine dispute of material fact over whether she mailed a copy of the charge to the EEOC before the February 21 deadline and, through no fault of her own, the EEOC failed to mark it "received."

On this score, Mrs. Simon has offered five pieces of evidence.  First, she points to a printout of her counsel's calendar that suggests he met with her on February 11, 2019.  ECF 29-1, Ex. L.  Second, she cites document metadata that reflects her counsel created a file on February 11, 2019, that appears to be the cover letter and charge her counsel purportedly sent to the EEOC.  ECF 29-1, Ex. J.  Third, she notes that the original charge that she signed was dated February 11, 2019.  ECF 29-1, Ex. 32.  Fourth, she offers a USPS postal receipt that says that something was mailed to the EEOC on her behalf on February 11, 2019.  ECF 29-1, Ex. K.  Fifth, she notes that the EEOC did not dismiss her charge as untimely, which is an option on the form that the EEOC returns.  ECF 29-1, Ex. N.

Construed in the light most favorable to Mrs. Simon, this evidence allows the reasonable inferences that: (1) Mrs. Simon met with her counsel on February 11, 2019; (2) Mrs. Simon signed the EEOC charge at that meeting on February 11, 2019; (3) counsel placed something in the mail to the EEOC on February 11, 2019; and (4) the EEOC decided not to dismiss the charge as untimely.  That is enough to put this issue to a jury.

To be sure, UPMC has offered contradictory evidence about when the EEOC received the charge.  Deborah Kane, the Director of the Pittsburgh Area Office of the EEOC, submitted a declaration stating that the EEOC date-stamped Mrs. Simon's charge as "received" on March 28, 2019, and that the EEOC's electronic case-management system does not show that Mrs. Simon tried to file before then.  ECF 29-1, Ex. O, Kane Decl., ¶¶ 13-14.  Ms. Kane also testified that it was the "regular practice" of her office to "date-stamp each hard-copy, paper document related to a charge of discrimination that it received[.]"  *Id.* at ¶ 16.  All that could be true, but it's not for the Court to weigh Ms. Kane's testimony against the contradictory evidence presented by Mrs. Simon.

In sum, "[b]ecause a reasonable factfinder could weigh the evidence in this case and conclude that the EEOC received [Mrs. Simon's] charge but simply lost, misplaced, or otherwise failed to timely process it, summary judgment [i]s inappropriate." *Laouini v. CLM Freight Lines, Inc.*, 586 F.3d 473, 479 (7th Cir. 2009).

## III.   Mrs. Simon is not judicially estopped from bringing her ADA claim.

According to UPMC, Mrs. Simon is estopped from asserting her ADA claim, because she cannot reconcile her statements to the Social Security Administration and the statements she makes in support of her ADA claim.   ECF 28, p. 18.   On her application for SSDI, Mrs. Simon wrote that "her employer terminated her employment due to her inability to perform her job as a result of her injury."   ECF 29-1, Baillie Dec. Ex. C, Simon SSDI Application, p. 22.   UPMC believes that "[t]his admission estops Mrs. Simon from now claiming that she was able to perform her job without further explanation."   ECF 28, p. 18.   The Court does not agree.

The Third Circuit has explained that "a plaintiff's prior sworn assertion in an application for SSDI benefits that [she] is, for example, unable to work will appear to negate an essential element of [her] ADA case." *Ehnert v. Washington Penn Plastic Co.*, 812 F. App'x 71, 74 (3d Cir. 2020) (cleaned up).   When presented with this situation, the Court must first ask "whether the representations advanced by that plaintiff in [her] SSDI application and [her] ADA claim genuinely conflict." *Id.* (cleaned up).   If the representations are "patently inconsistent," the court must then examine "whether the plaintiff has adequately reconciled the two positions." *Id.* at 74-75 (citation omitted).   UPMC's argument falls short because Mrs. Simon's representations in her SSDI application and in support of her ADA claim do not actually conflict.

In her application, Mrs. Simon only contends that UPMC terminated her "due to her inability to perform following her injury."   That's fundamentally different from

her allegation here that she could have performed if UPMC had granted and honored her requested accommodation.  ECF 29-1, Baillie Dec. Ex. C, Simon SSDI Application, p. 22.  Indeed, that allegation is irrelevant to the determination of eligibility for SSDI.  *See Gucker v. U.S. Steel Corp.*, No. 13-583, 2015 WL 3693429, at *3 (W.D. Pa. June 12, 2015) (Fischer, J.) ("[W]hile the ADA considers whether a plaintiff can perform [her] job with reasonable accommodations, the SSA does not take such accommodations into account[.]").  Given that, the Court finds that Mrs. Simon's statements in her SSDI application do not conflict with her ADA claim that she could perform the essential functions of her previous job with reasonable accommodation, so "judicial estoppel does not bar [her] ADA claim."  *Id.* at *5.

**IV.    There is a genuine dispute of material fact about whether Mrs. Simon is a "qualified individual" under the ADA.**

Lastly, UPMC argues that Mrs. Simon cannot establish her prima facie claim of discrimination.  ECF 28, pp. 16-22.  "To make out a *prima facie* case under the ADA, a plaintiff must establish that s/he (1) has a disability, (2) is a qualified individual, and (3) has suffered an adverse employment decision as a result of that disability."  *Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 278 (3d Cir. 2001) (cleaned up).  UPMC does not dispute the first and third elements—that is, UPMC concedes that Mrs. Simon was "disabled" and suffered an "adverse employment action" under the statute.  ECF 28, pp. 16-22.  Instead, UPMC only argues that Mrs. Simon has not established she is a "qualified individual," because she failed to present evidence that she was "able to perform the essential job functions of a Lead Patient Care Technician *without* additional reasonable accommodation, and she has not identified a reasonable accommodation which would have enabled her to perform the job *with* the accommodation."  *Id.* at p. 17.  The Court finds, however, that Mrs. Simon has offered enough evidence to create a genuine dispute of material fact that she could

have performed her job with the reasonable accommodation of not working consecutive 12-hour shifts.

A "qualified individual" is someone "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Skerski*, 257 F.3d at 278. To meet her burden of proving she is a qualified individual, Mrs. Simon must satisfy two requirements. First, she must "demonstrate that [she] satisfies the requisite skill, experience, education and other job-related requirements of the employment position that such individual holds or desires." *Id.* (cleaned up). Second, she must show that, with or without reasonable accommodation, she "can perform the essential functions of the position held or sought." *Id.* "The determination of whether an individual with a disability is qualified is made at the time of the employment decision." *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998).

UPMC assumes at this stage that Mrs. Simon meets the first requirement because she had the skill, experience, and education to perform the job as a Lead Patient Care Technician. ECF 28, p. 17. As a result, this case comes down to the second prong.

That second prong itself requires "another two-part inquiry." *Skerski*, 257 F.3d at 278. First, the Court must determine whether Mrs. Simon "can perform the essential functions of [her] job *without* accommodation." *Id.* (emphasis in original). If she can, then she's a qualified individual. If she can't, then the Court "must then inquire whether [she] can perform those same functions *with* a reasonable accommodation." *Id.* (emphasis in original).

To begin with, there is no genuine dispute on this record as to the essential functions of Mrs. Simon's job as a Lead Patient Care Technician. That position

required Mrs. Simon to perform patient rounds, which included documenting patients' blood glucose levels, weights, and vital signs; bathing patients; and monitoring their nutrition and mobility. ECF 29-6, Simon Dep., 184-18-185:14. Mrs. Simon was also expected to provide "follow-up with nursing staff throughout the shift," obtain reports from bedside nurses "to maintain organization throughout the shift," and "follow through with each task" asked of her. *Id.* at 185:15-189:2.

Mrs. Simon concedes that she couldn't perform these essential functions ***without*** accommodation. ECF 32, pp. 15-18. She therefore "cannot be considered a 'qualified individual' under this definition." *Rice v. Erie Indem. Co.*, No. 06-176, 2008 WL 11509304, at *13 (W.D. Pa. Sept. 30, 2008) (McLaughlin, J.). So this case ultimately turns on whether Mrs. Simon has marshaled enough evidence to establish that she could perform the essential functions of her job ***with*** one of her two proposed accommodations. She has done so for one of them, so summary judgment is not warranted.

On the issue of performing with a reasonable accommodation, "the plaintiff bears only the burden of identifying an accommodation, the costs of which, facially, do not clearly exceed its benefits." *Skerski*, 257 F.3d at 284 (cleaned up). "Summary judgment may be granted for a defendant only in cases in which the plaintiff's proposal is either *clearly ineffective* or *outlandishly costly*." *Id.* (cleaned up) (emphasis in original).

There is a genuine dispute of material fact as to whether Mrs. Simon could perform the essential functions of a Patient Care Technician if she did not have to work consecutive 12-hour shifts. Indeed, every aspect of this accommodation request and its potential effect on Mrs. Simon's performance is mired in factual uncertainty and dispute.

For example, the parties do not agree about when Mrs. Simon first communicated her accommodation request to UPMC.  She claims it happened in August 2017 (ECF 29-6, Simon Dep., 154:14-155:11); UPMC claims it didn't happen until December 2017 (ECF 28, p. 2).  The parties further dispute whether UPMC ever truly granted this accommodation.  Mrs. Simon claims that it was only "granted on paper," because even after UPMC claims it granted her request, she continued to work consecutive shifts.  ECF 32, pp. 1, 15.  UPMC counters that it did grant and honor this accommodation for a time, and only stopped when Mrs. Simon withdrew her request.  ECF 28, pp. 21-22.  Finally, the parties take drastically different positions on whether the accommodation would have mattered for Mrs. Simon's performance.  Mrs. Simon claims she was "qualified to continue working in her position with days off between shifts."  ECF 32, p. 15.  But UPMC counters that "Mrs. Simon was unable to perform her job satisfactorily whether she worked back-to-back shifts or had a day off in between shifts."  ECF 33, p. 8.  There is conflicting evidence on this point.  UPMC did give Mrs. Simon a lukewarm annual review and placed her on a performance improvement plan leading up to her termination, but the reports while she was on that plan, including during the time her request for non-consecutive shifts was supposedly honored, are inconclusive.  *See* ECF 29-4, pp. 54, 56, 58.  And Mrs. Simon claims that, before her injury, she "performed perfectly" and had been given several awards.  ECF 29-6, Simon Dep., 100:2, 184:4-7.

"This Court is not free to weigh the dueling versions of the facts, which is the essence of [UPMC's] Motion for Summary Judgment."  *See, e.g.*, *Logsdon v. Univ. of Pittsburgh Med. Ctr.*, No. 17-1634, 2018 WL 10230686, at *2 (W.D. Pa. Sept. 18, 2018) (Schwab, J.).  That is the jury's province.  *See, e.g.*, *Skerski*, 257 F.3d at 286 ("We therefore find that there is a genuine issue of material fact as to whether Time

Warner provided Skerski with a reasonable accommodation, thereby making summary judgment inappropriate."); *Logsdon*, 2018 WL 10230686, at *2 ("There are genuine disputes of material facts as to whether Logsdon is a qualified individual with a disability, whether she can perform the essential functions of the job, [and] whether her proposed accommodation … was reasonable[.]"); *Morton v. Cooper Tire & Rubber Co.*, No. 12-28, 2013 WL 3088815, at *5 (N.D. Miss. June 18, 2013) ("[T]here is a genuine dispute of material fact as to whether Plaintiff could perform the essential functions of the job with the limited breaks he allegedly requested.").

That said, the Court notes one additional matter. Even though there is a material dispute of fact over Mrs. Simon's "shift accommodation," there isn't such a dispute over her request to be transferred to a different position.[3]  Therefore, at trial,

---

[3] That is, Mrs. Simon cannot meet her prima facie burden for her accommodation request to be transferred to a different position. ECF 32, p. 15.

Mrs. Simon can satisfy her burden on this request if she "can make at least a facial showing that [her] proposed accommodation is possible." *Gaul*, 134 F.3d at 580 (citation omitted). Specifically, Mrs. Simon must "demonstrate that there were vacant, funded positions whose essential duties [she] was capable of performing, with or without reasonable accommodation, and that these positions were at an equivalent level or position as [her former job]." *Id.* (cleaned up). Mrs. Simon offers three alternatives to her job as a Patient Care Technician: a clerical position in the school of nursing, a job as a "safety sitter," or a "less stressful position." ECF 32, pp. 15-16. There are problems with each of these positions.

The clerical position in the school of nursing doesn't meet the standard established by the Third Circuit because it was a temporary transitional assignment, reserved for those recovering from workplace injuries—or as Mrs. Simon put it, "a made up job for people on light duty." ECF 29-6, Simon Dep., 64:21-25. "But it is well-established that the ADA does not require an employer to create a new position or transform a temporary light duty position into a permanent position." *Gera v. County of Schuylkill*, 617 F. App'x 144, 146 (3d Cir. 2015) (cleaned up). So this proposed accommodation is unreasonable as a matter of law. *See id.*

The next position Mrs. Simon suggests as a possibility is that of a "safety sitter." While that may be a full-time position that exists at UPMC, Mrs. Simon has

Mrs. Simon's ADA accommodation claim will be limited to only her request to not work back-to-back 12-hour shifts.

## **CONCLUSION**

For the reasons above, the Court will deny UPMC's motion for summary judgment.  An appropriate order follows.

DATED this 23rd day of August, 2021.

BY THE COURT:


/s/ J. Nicholas Ranjan
United States District Judge

---

not offered sufficient evidence to establish that it was available to her when she requested the accommodation.

The last position Mrs. Simon suggests is that of a generic, "less stressful" position.  "But a request to be transferred to a less stressful position, or to a more stable and supporting environment, is unreasonable as a matter of law."  *Nesby v. Yellen*, No. 18-1655, 2021 WL 1340000, at *11 (W.D. Pa. Apr. 9, 2021) (Wiegand, J.).